## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 739 | **DATE** | 11/19/2012 |
| **CASE TITLE** | Ratliff vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court grants in part and denies in part Defendants' motions in limine [94] and grants in part and denies in part Plaintiff's motions in limine [96]. The Court also grants Defendants' motion for leave to file an additional motion in limine 20 [111]. In light of the response and reply briefs filed on November 18, 2012 the Court reserves ruling on related motions in limine 5 and 20. The Court will discuss the recent filings with counsel at today's status hearing.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

**A.     Motions Granted Without Objection**

The Court grants without objection Defendants' motions in limine 4, 6, 7, 8, 9, and 12 and Plaintiff's motions in limine 1, 2, 3, 5, 6, and 12. Plaintiff did not submit a motion in limine 4.

**B.     Defendants' Contested Motions in Limine [94]**

   1.     Defendants' 1 and 10

In their motion in limine 1, Defendants move to bar Plaintiff from arguing or eliciting testimony to the effect that deficiencies in the hiring, training, or supervision of Defendant Officers contributed to Plaintiff's claims. Defendants point out that Plaintiff does not have a pending *Monell* claim or a claim of *respondeat superior* liability. Plaintiff does not object to the exclusion of evidence and argument related to any causal connection between hiring, training, and supervision and Plaintiff's injuries, but maintains that the Court should not bar all evidence related to training and supervision.

In their motion in limine 10, Defendants seek to bar Plaintiff from eliciting any testimony, evidence, or argument regarding the existence of or standards set by any General Orders, or other rules and regulations, including any allegation that the Defendant Officers violated a general order by agreeing to park Ratliff's car on Lorel Avenue.

As to both motions in limine 1 and 10, the Court agrees with Plaintiff that Defendants' motions are overly broad, yet (as noted at the final pre-trial conference) there are well-established limitations on the relevance of testimony relating to training, supervision, general orders, and police department policies. In regard to the

**STATEMENT**

issues raised in motion in limine 1, Plaintiff properly notes that the manner and method of documenting citizen complaints, performing stops, performing arrests, and inventorying property may touch on issues related to the training and supervision of Defendants. Therefore, to the extent Defendants' training and supervision are relevant to the incident in question, either side may inquire on these issues. Defendants' motion in limine 1 is denied to that extent. However, as explained more fully in the discussion below, the failure of Defendants to comply with any general or special orders or department policies concerning hiring, training, or supervision may not be used as either a sword or a shield in regard to whether a constitutional violation has occurred.

Turning to Defendants' motion in limine 10, the seminal case in this circuit on the admissibility of testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders of police or sheriff's departments is *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). *Thompson* involved a § 1983 claim (for excessive force) and a state law claim (for wrongful death) arising out of the arrest of the plaintiff. The district court granted a motion *in limine* seeking to "exclude any reference in testimony, evidence, or argument to the CPD's General Orders, policies, and procedures." *Id*. at 449 & n.12 (explaining the slight discrepancy between the motion that the court granted and the text of the docket entry reflecting the granting of the motion). The Seventh Circuit affirmed the district court's ruling, both with respect to the use of General Orders as evidence of the federal constitutional violation and as evidence in support of the state law claim.

As to the constitutional violation, the Seventh Circuit categorically stated that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established." *Thompson*, 472 F.3d at 455 (emphasis added); see also *Whren v. United States*, 517 U.S. 806, 815 (1996) (holding that internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (holding that § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). In elaborating on its ruling, the Seventh Circuit explained that while evidence, testimony, or argument concerning possible violations of General Orders, rules, or regulations may be relevant to "discipline, promotion, or salary decisions" made by the Defendants' superiors, that kind of information is "immaterial" in proceedings before a district court on claims of constitutional violations and therefore "properly excluded" in rulings on motions *in limine*. *Thompson*, 472 F.3d at 455. For all of these reasons, Defendants' motion in limine 10 is granted in part, as the existence of the General Orders cannot be used in this case to show that the Plaintiff's constitutional rights were (or were not) violated.

Defendants also contend that testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders would be improper as to Plaintiff's state law claims. In *Thompson*, the Seventh Circuit "assume[d], without deciding, that the CPD's General Orders were relevant to [Plaintiffs'] wrongful death claim," but nevertheless "conclude[d] that they were properly excluded under Rule 403." 472 F.3d at 456. Although the statutory wrongful death claim at issue in *Thompson* appears to impose liability under a negligence standard (see *id*. at 457; see also 740 ILCS 180/1; *Leavitt v. Farwell Tower Ltd. P'ship*, 252 Ill. App. 3d 260, 264 (1993)), the Seventh Circuit relied on Illinois case law holding that "violation of self-imposed rules or internal guidelines * * * does not normally impose a general duty, *let alone constitute evidence of negligence, or beyond that, willful and wanton conduct*." *Thompson*, 472 F.3d at 457 (emphasis added) (quoting *Morton v. City of Chicago*, 286 Ill. App. 3d 444 (1997)). Moreover, in completing its Rule 403 analysis, the Seventh Circuit expressly addressed – and rejected – the notion that a limiting instruction could render evidence of a failure to adhere to General Orders admissible. *Id*. As the court explained, "[a]ny limiting instruction explaining to the jury that, although General Orders do not create a duty on the part of an

officer and can only be used as evidence of a breach of protocol in a disciplinary proceeding – and that they could not be considered in conjunction with the plaintiffs' § 1983 claims – would have led to unnecessary and detrimental jury confusion." *Id*.

Thus, on the basis of the Seventh Circuit's decision in *Thompson*, any attempt to use General Orders, rules, or policies of the CPD as evidence of a federal constitutional violation appears to be forbidden under Rule 401. *Thompson*, 472 F.3d at 454. In addition, under *Thompson*, any effort to use such General Orders, rules, or policies in support of a state law cause of action that applies a negligence or willful and wanton standard appears to face, at a minimum, a very high hurdle under Rule 403. *Id*. at 457. Among other things, in conducting the Rule 403 analysis, the Court must consider whether the potential for a complex "trial within a trial" focused on General Orders, rules, and/or policies will distract the jury from the critical issues for decision while adding very little of probative value for their consideration.

While it is clear under *Thompson* that (i) the proponent of such evidence, testimony, or argument has a heavy burden to shoulder under Rule 401 and Rule 403, and (ii) limiting instructions may not be a viable means of overcoming Rule 403 issues, the Court cannot conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could come into this case. Put differently, to the extent that the door remains open under *Thompson*, it is only slightly ajar. See *Via*, 2007 WL 495287, at *6 ("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages").

In light of the foregoing, the Court grants in part Defendants' motion *in limine* 10 and bars any testimony, evidence, or argument regarding any CPD General Orders, policies, or procedures in support of Plaintiff's § 1983 liability claims. However, it is at least conceivable that the manner and method of documenting citizen complaints, performing stops, performing arrests, and inventorying property could raise issues about the training of Defendants and the use of general orders or policies *may* clarify for the jury what the evidence means. Thus, the Court reserves its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances not foreclosed by *Thompson* and *Morton*. Should either side seek to introduce testimony, evidence, or argument regarding any CPD Office General Orders, policies, or procedures in those limited circumstances, counsel must notify the Court and opposing counsel outside the presence of the jury and with sufficient advance notice to permit analysis under Rules 401 and 403 in light of the applicable Seventh Circuit or Illinois case law.

2. Defendants' 2

Defendants move to bar Plaintiff from introducing or suggesting misconduct by officers or City of Chicago employees who are not named defendants in this matter. Defendants' reference to "misconduct" evidence relates to a conversation between Plaintiff and an older officer after his arrest, as well as to Plaintiff's interaction with the police department regarding his vehicle after his release from custody. Defendants' motion in limine 2 is denied in part. The evidence referred to in Defendants' motion is relevant because it is evidence of the incident in question. While the above-described evidence is not probative on the issues of probable cause and reasonableness, those are not the only issues before the Court. Plaintiffs are routinely permitted to describe their recollections of events from the moment of their arrest to the termination of any legal proceedings resulting from the arrest, as well as any additional consequences to them that plausibly can be attributed to the Defendants' conduct. Within those parameters, the evidence targeted in Defendants' motion in limine 2 therefore is relevant under 401 and 402. However, Plaintiff may not insinuate that any non-Defendant officers committed misconduct, since there are no claims against any such officers in this case.

**STATEMENT**

   3.   Defendants' 3

Defendants' move to bar Plaintiff from arguing that Defendants and non-defendant City employees are biased and generally protect one another because of their allegiance to fellow City workers. In other words, Defendants seek to bar evidence or arguments about a "code of silence." Plaintiff has indicated in his response that he wants to examine the issue of bias on cross examination and that the code of silence may be properly raised in this context.

Defendants argue that such evidence is akin to prior bad acts evidence and would violate Federal Rules of Evidence 401, 402, and 403. However, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52 (1984). Indeed, "[a] party's and a witness's common group membership is probative of bias * * *." *Townsend v. Benya,* 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Thus, to the extent that Plaintiff focuses on the officers and incidents involved in this case, Plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another. See, *e.g., Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004); *Galvan v. Norberg*, 2006 WL 1343680, at *3 (N.D. Ill. May 10, 2006) (denying motion in limine seeking to bar "code of silence" evidence since "evidence or argument of this type can go to the issue of the bias or motivation of witnesses").

With that said, the Court agrees with Defendants that generalized allegations—separate and apart from what may be true of the officers named as Defendants here—are not helpful and are akin to impermissible propensity evidence. *Maldonado v. Stinar,* 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (allowing evidence of bias among the particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall" (citing *Christmas v. City of Chicago,* 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (same), and *Moore v. City of Chicago,* 2008 WL 4549137, at *6 (Apr. 15, 2008) (same))); see also *Betts v. City of Chicago*, 2011 WL 1837805, at *5 (N.D. Ill. May 13, 2011); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010) (barring plaintiff from presenting evidence showing police generally protect or cover up for each other and that there is a code of silence in the CPD). Unlike some plaintiffs in other cases (see, *e.g.*, *Obrycka v. City of Chicago*, 2012 WL 601810, at 7-8 (N.D. Ill. Feb. 23, 2012), in which expert testimony tailored to the specific facts of a case has persuaded courts to allow "code of silence" arguments, the evidence in this case supports only the usual cross-examination for bias. Thus, Defendants' third motion *in limine* is granted in part and denied in part as follows: (1) Plaintiff may present evidence that Defendant Officers are attempting to cover up the (allegedly) wrongful conduct arising from the incidents in this case or otherwise are biased toward one another; (2) Plaintiff may not use the terms "code of silence" or "blue wall" as these terms are unduly prejudicial; and (3) Plaintiff may not introduce evidence or argue that law enforcement officers typically adhere to a "code of silence" or "blue wall" or seek to cover up misconduct in order to protect fellow officers.

   4.   Defendants' 11

Defendants seek to bar any comment on Defendants' failure to call witnesses or produce evidence. Defendants request that the Court bar Plaintiff from conveying to the jury that Defendants are hiding exculpatory evidence by choosing not to call a particular witness or present certain evidence. Plaintiff contends that it is an accepted routine tactic to point to missing testimony and evidence of an opponent. The Court agrees with Defendant that it would be improper for Plaintiff to insinuate without evidentiary support that Defendants are purposefully attempting to hide evidence, particularly since Plaintiff bears the burden of proving his case. Therefore, the Court grants in part Defendants' motion in limine 9. However, the Court is

**STATEMENT**

not barring Plaintiff from arguing that there are deficiencies in Defendants' case due to the absence of testimony by certain individuals or the absence of certain evidence. It is merely improper for Plaintiff to insinuate that Defendants are purposefully hiding evidence or to suggest that Defendants bear the burden of proof. The Court will instruct the jury as to Plaintiff's burden of proof.

5. Defendants' 13

Defendants' thirteenth motion in limine seeks to bar testimony regarding conversations with unknown and undisclosed individuals. Plaintiff does not object to a bar on evidence from Plaintiff about observations made by the gas station attendant on the date of Plaintiff's arrest. However, Plaintiff objects to the rest of the motion. According to Plaintiff, he obtained the security video from the service station that shows the incident in question. Plaintiff maintains that the conversation with the attendant is not hearsay because it is not offered to prove the truth of the matter asserted but rather is offered to prove the course of his investigation. At this point, the Court denies without prejudice Defendants' thirteenth motion in limine. If Plaintiff can lay the foundation for this evidence (the videotape) in a non-hearsay manner, then Plaintiff may use this evidence, as it is relevant to the issues at trial. However, if Plaintiff failed to disclose this evidence or is unable to lay a foundation for the evidence, the evidence will not be admitted at trial.

6. Defendants' 14

Defendants seek to bar Plaintiff from calling non-party witnesses as hostile witnesses or as witnesses identified with an adverse party. Plaintiff objects, noting that witnesses identified with an adverse party are presumed hostile in law under 611(c). See *Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981) (noting that "when the city is a defendant to a §1983 claim, police officers employed by the city and who were present during portions of the incident at issue are 'clearly qualified as a witness identified with an adverse party'"); *Favila v. City of Chicago*, No. 09-C-3265 (N.D. Ill. June 1, 2011) (holding that "the real test for leading questions under the Rule is whether the other officers are "identified with an adverse party" in this case). At this juncture, Defendants' motion is denied as premature. The Court has instructed the parties to provide the Court with a list of witnesses that they intend to call as adverse and any objections the opposing side may have to those designations. After the Court reviews those designations, the Court will determine whether the witnesses are in fact adverse and thus properly classified as hostile.

7. Defendants' 15

Defendants seek to bar testimony or opinions by any witnesses without medical training regarding Plaintiff's alleged emotional injuries. Defendants' motion is granted in part and denied in part. To the extent that Plaintiff's witnesses attempt to diagnose Plaintiff with a clinical illness, the witnesses will be barred from doing so. However, Plaintiff may testify about what happened and how he felt after the incident. To the extent that they have been disclosed, Plaintiff also may present witnesses who can testify to Plaintiff's behavior after the incident. In sum, Plaintiff may offer testimony about treatment and symptoms, but cannot offer medical opinion testimony. Specifically, Plaintiff cannot testify as to causation, only as to what happened and how it made him feel. See *Banister v. Burton*, 636 F.3d 828 (7th Cir. 2011); *Meyers v. National Railroad Passenger Corp.*, 619 F.3d 729 (7th Cir. 2010).

8. Defendants' 16

Defendants seek to bar any statement that Defendants have not complied with or been diligent with respect to any discovery issue. Defendants' motion is granted in part and denied in part. To the extent that a discovery

issue arises during the course of the trial, the parties are instructed to bring the issue to the Court's attention outside the presence of the jury. In regard to Defendants' amended answer, Plaintiff may cross-examine Defendants on the fact that Defendants changed their answer to the complaint midway through the litigation. However, Plaintiff may not run afoul of Judge Keys' ruling, for instance by suggesting that Plaintiff did not receive an opportunity to challenge Defendants' new assertions. The time for raising any objections to Judge Keys' ruling has passed. In any event, the Court agrees with the ruling and sees no basis for modifying it for trial.

   9.   Defendants' 17

As explained on the record during the final pretrial conference in this matter, Defendants' motion seeking to bifurcate Plaintiff's malicious prosecution claim or to bar evidence of the striking of Plaintiff's arrest is not well-founded. Bifurcation is not in the interest of judicial economy. The claims asserted by Plaintiff are interwoven and it would be an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials. Furthermore, the mode of the dismissal of the criminal charges is an element of Plaintiff's malicious prosecution claim. As is routine practice through this circuit, such claims are often tried together and with good reason. The issues in this case (and others like it) are not complex, and the Court has no concerns about juror comprehension in light of the instructions that will be given. Defendants' seventeenth motion in limine is denied.

   10.  Defendants' 18

Defendants seek to bar "any claims of defamation." Defendants' motion is granted in part. Plaintiff has not brought a defamation claim. Rather, he seeks damages as a result of the alleged harm that he received as a result of his arrest and incarceration. Plaintiff can testify to the harm that he believes he has suffered, including any feelings of embarrassment and/or humiliation that he may have felt, and Defendants can cross-examine him on that testimony. However, because "defamation" is a legal concept that has a defined meaning and Plaintiff has asserted no claim to relief under a defamation rubric, any claim for damages specifically related to alleged "defamation" must be excluded as both irrelevant and likely to cause juror confusion.

   11.  Defendants' 19

Defendants seek to bar any claim for damages regarding Plaintiff's stolen motor vehicle. Defendants' motion is denied. The issue here is whether theft of a motor vehicle is a reasonably foreseeable consequence of parking the vehicle on the curb and leaving it unlocked, following the arrest of the owner. This is a question of fact for the jury. Similarly, the amount of damages that the jury may award Plaintiff for the loss of his vehicle is an issue appropriate for the jury. Defendants may present evidence to rebut Plaintiff's damages evidence—for instance, Defendants may cross-examine Plaintiff about any liens on his car or about the value of his car—but the Court will not bar Plaintiff from pursuing damages related to his car.

**C.   Plaintiff's Contested Motions in Limine [96]**

   1.   Plaintiff's 7

Plaintiff seeks to bar Defendants from making any reference to any and all prior arrests as well as any reference to prior convictions, if any. According to Plaintiff, he has one prior arrest for theft in 2005, for

**STATEMENT**

which he was not convicted.

Plaintiff's seventh motion in limine is tied to Defendants' fifth motion in limine. As set forth in ruling on Defendants' fifth motion, to the extent that Plaintiff does not put his arrest record at issue, Defendants may not refer to any prior arrests. The prejudice resulting from the introduction of evidence of Plaintiff's prior arrests substantially outweighs the limited relevance that such evidence would have in this case. See *Young v. Cook County*, 2009 WL 2231782, at *6 (N.D. Ill. Jan. 27, 2009) (excluding evidence of prior arrests in § 1983 case as "grossly unfairly prejudicial in a way that greatly outweighs its minuscule probative value"). In the unlikely event that Plaintiff opens the door by stating that he had never been arrested prior to the incident in question, or by claiming that the current incident and arrest have adversely affected his ability to secure employment, he likely will open the door to Defendants' inquiry on his prior 2005 arrest. Should this issue arise at trial, the Court will take up this matter outside the presence of the jury.

    2.      Plaintiff's 8

Plaintiff asks the Court to bar Defendants from eliciting testimony regarding past incidents of gang activity or police calls in the neighborhood where Plaintiff was arrested. Stated a different way, Plaintiff moves to bar any reference to the arrest location as a "high crime" area under Rule 403. Defendants respond that this evidence is relevant and its probative value outweighs any risk of prejudice. To determine whether Defendants had probable cause to arrest Plaintiff, the jury must evaluate "the common-sense judgment of the officers based on a totality of the circumstances," including Plaintiff's "presence in a high crime area." *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006); *United States v. Brown,* 188 F.3d 860, 865 (7th Cir. 1999); *Betts v. City of Chicago, Ill*, 2011 WL 1837805, at *1 (N.D. Ill. May 13, 2011). Accordingly, reference to the area where Plaintiff was arrested provides the jury with context and will be permitted. With that said, any such testimony elicited may address (briefly) Defendants' personal experience in the area where the arrest took place and should focus on "objective factual terms" without resorting to sweeping generalizations or belaboring the relevant points. See *Peters v. City of Chicago*, 2011 WL 679911, at *1 (N.D. Ill. Feb. 16, 2011). For instance, Defendants should not use "high crime area" to describe the location where Plaintiff was arrested, but may describe why they were in the area (*e.g.,* to investigate narcotics activity) to the extent that the evidence supports this testimony. Subject to those limitations, Plaintiff's eighth motion in limine is denied.

    3.      Plaintiff's 9

Defendants charged Plaintiff with assault. The threat alleged in this case is, "If you don't let me finish filling my tires with air, I'm going to kill you." Plaintiff believes that Defendants will seek to prove the reasonableness of Defendants' apprehension of an alleged threat by reference to Defendants' lack of knowledge about (i) items that could have been concealed around the wheel or under Plaintiff's vehicle or (ii) Plaintiff's alleged drug dealing (of which there does not appear to be any evidence). In other words, Plaintiff believes that Defendants may attempt to establish an assault based upon circumstances unknown to Defendants or upon their belief that Plaintiff sold drugs and thus moves to bar any argument of "the unknown of drug sales in order to establish that an aggravated assault occurred or probable cause thereof." Put yet another way, it appears that Plaintiff fears that Defendants will rely on speculation in attempting to establish the reasonableness of their apprehension of an imminent assault.

The reasonableness of Plaintiff's arrest for aggravated assault is a question of fact for the jury to decide. Testimony set forth by Defendants indicates that they intend to present evidence that they initially attempted to conduct a field interview with Ratliff because they witnessed potential narcotics-related activity.

**STATEMENT**

Defendant Officers' testimony regarding the circumstances of their initial and continued interaction with Plaintiff is relevant to the arrest and Plaintiff's allegations. Furthermore, the jury will have to consider the reasonableness of Defendant Officers' understanding at the time of the incident. Whether Defendant Officers believed the Plaintiff had weapons or narcotics is a factor for the jury to consider when assessing the arrest of Ratliff. However, the jury also will consider the absence of drugs and a weapon at the scene in deciding whether Defendants' actions were reasonable. At the conclusion of the parties' presentations, the jury will be instructed on the elements of assault and will be allowed to consider the reasonableness of the beliefs held by the officers at the time of the arrest as well as the evidence (or lack of evidence) presented to support those beliefs. Defendant Officers' testimony regarding their belief as to Plaintiff's actions prior to and during the arrest are facts that may be presented to the jury. Plaintiff's ninth motion is denied.

    4.    Plaintiff's 10

Plaintiff's tenth motion in limine is denied. Whether Defendant Officer Carroll received notice to appear in court is a question of fact for the jury to decide. Plaintiff may cross examine Defendant Officer Carroll at trial on his inconsistent positions during this litigation through his deposition testimony or with Defendants' initial answer to Plaintiff's complaint.

    5.    Plaintiff's 11

During the final pretrial conference, both Plaintiff and Defendants indicated to the Court that they do not intend to use the IPRA records and findings during trial unless the opposing side raises the issue. At this stage, the parties have not presented any good reason for presenting any evidence related to the IPRA investigation. Therefore, the Court provisionally grants Plaintiff's eleventh motion in limine.

*[signature]*