**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PARES RATLIFF, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 0739 |
| | ) | |
| CITY OF CHICAGO, CHICAGO POLICE | ) | JUDGE DOW |
| OFFICERS J. CARROLL, Star #6261, and | ) | |
| B. MURPHY, Star #10089, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR PARTIAL
JUDGMENT AS A MATTER OF LAW**

NOW COMES Plaintiff, Pares Ratliff, by and through one of his attorneys, Jared S.
Kosoglad, hereby moves this Honorable Court pursuant to F. R. Civ. P. 50(a) grant his motion
for judgment as a matter of law.  In support thereof, Plaintiff states as follows:

This court should rule in favor of Pares Ratliff because the facts presented at trial have
proven, as a matter of law, that the Defendants violated his constitutional rights.  Judgment as a
matter of law is appropriate when no rational jury could find for the nonmoving party.  *See* F. R.
Civ. P. 50(a).  All reasonable inferences should be drawn in favor of the nonmoving party.
*Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1173 (7th Cir. 2002).  However, the Court should still
give credence to evidence favoring the moving party that is uncontradicted or unimpeached, so
long as the evidence came from disinterested witnesses.  *Reeves v. Sanderson Plumbing Prods.,
Inc.* 530 U.S. 133, 150 (2000); *Davis v. WI Dpt. of Corrections*, 445 F.3d 971, 975 (7th Cir.
2006).  Accepting, *arguendo*, all facts in Defendants' favor, Mr. Ratliff is entitled to judgment as
a matter of law.

No assault could have occurred as Mr. Ratliff did not gesture at the defendants, and no
reasonable officer would have been in apprehension of harm from the air hose.  As such, the

defendants' seizure of Mr. Ratliff was unlawful, and his subsequent prosecution was malicious

as a matter of law. Furthermore, the only grounds upon which defendants could have searched

or seized Mr. Ratliff's person or car was consent, which he did not give. Therefore, he is entitled

to judgment as a matter of law.

**I.      DEFENDANTS ARE LIABLE, AS A MATTER OF LAW, FOR FALSE ARREST BECAUSE THEY HAD NO PROBABLE CAUSE TO BELIEVE THAT MR. RATLIFF COMMITTED AN AGGRAVATED ASSAULT**

The only exception for a warrantless arrest under the Fourth and Fourteenth Amendments

is when the arresting officer has probable cause to believe a crime was committed. *Thompson v.*

*Wagner,* 319 F.3d 931, 934 (7th Cir. 2003). To prove unlawful arrest, a Plaintiff must establish

that there was no probable cause for his or her arrest. *Kelley v. Myler*, 149 F.3d 641, 646 (7th

Cir. 1998). Probable cause exists when the totality of the facts and circumstances within his

knowledge would lead a reasonably prudent person to believe that the suspect was or is

committing an offense. *See Shipman v. Hamilton*, 520 F.3d 775, 778 (7th Cir. 2008); *Beck v. OH*,

379 U.S. 89, 91 (1964). Often, probable cause is a "commonsense determination." *Tangwall v.*

*Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998). As such, the test is objective. *Payne v. Pauley*, 337

F.3d 767, 776 (7th Cir. 2003).

Defendants allege that they saw Mr. Ratliff look in their direction and bend or kneel by

his tire as they approached in an unmarked vehicle. As a result, Defendants then approached Mr.

Ratliff to investigate a possible narcotics transaction, ordering Mr. Ratliff to drop the air hose.

Mr. Ratliff refused, according to defendants, stating instead a word like Dude, followed by "If

you do not let me finish filling my tire with air, I'm going to kill you." At the time, Mr. Ratliff

was kneeling or bending over toward the ground with an air hose in his hand and Defendants

were positioned behind and standing above Mr. Ratliff with loaded 9mm Smith and Wesson

semi-automatic weapons, chemical spray, handcuffs, a collapsible metal baton (Defendant Murphy), and flashlights. Defendants further allege that when Mr. Ratliff made the alleged threat, Mr. Ratliff "clenched" his hand around the air hose. These facts do not establish probable cause for aggravated assault as a matter of law.

### A. There is No Probable Cause That an Assault Occurred Because a "Clench" is Not a Gesture.

Defendants alleged that Mr. Ratliff violated 720 ILCS 5/12-2(b)(4) by committing an assault against a peace officer. Under Illinois law, a person commits assault when "he or she knowingly engages in conduct which places another in a reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a). The Seventh Circuit interpreted this to mean, as it applies here, that an assault occurs when: (1) an innocent gesture made threatening by its accompanying words (2) creates a reasonable apprehension of receiving a battery.[1] *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004). Defendants' only plausible argument is that Mr. Ratliff's statement made the clenching of his fist around the air hose threatening. Their argument would be unpersuasive.

First, a "clench" is a muscular reaction. Muscular reactions can be voluntary or involuntary. It would seem that a voluntary muscular reaction is more menacing than an involuntary one, therefore Plaintiff will proceed under that assumption. Regardless, Defendants still do not argue that Mr. Ratliff actually moved the air hose until Defendant Carroll reached out to forcibly take the air hose away. They simply argue that he voluntarily made his muscles more taut. That, however, is not a gesture. Neither is clenching one's abdominal muscles, flaring one's nostrils, or raising one's eyebrows.

---

[1] For criminal battery to be occur, the physical contact must "cause bodily harm" or be "of an insulting or provoking nature." 720 ILCS 5/12-3. Defendants are, presumptively, arguing the first.

Second, at the time that the defendants approached Mr. Ratliff, he already had his fist clenched. It is undisputed that Mr. Ratliff held an air hose in his hand at the time the officers approached. Further, Defendants do not argue that Mr. Ratliff clenched his free hand, in an attempt to make a fist. Rather, their argument only implies that he strengthened the clench on his already clenched fist. Again, that is not a gesture. If someone were tapping her fingers on a table as they yelled a threat, tapping her fingers on the table faster would not make the threat any more or less believable, and it most certainly could not constitute an independent action.

A gesture is "a movement usually of the body or limbs that expresses or emphasizes an idea, sentiment, or attitude." *Merriam-Webster.com*. 2012. <http://www.merriam-webster.com> (28 Nov 2012). No angle from which the facts are viewed meets that definition. If anything, Mr. Ratliff's clench emphasizes the idea that he wanted to finish filling his tire with air—nothing more and nothing less. Because an essential element of the claim for assault is lacking, no reasonable jury could find that Mr. Ratliff committed an assault. There was no probable cause for his arrest and this Court should enter an order granting him judgment as a matter of law.

### B. There is No Probable Cause that an Assault Occurred Because No Reasonable Person Would Have Feared Receiving a Battery.

In order for an assault to occur, the victim's apprehension of receiving a battery must be reasonable. This is an objective standard. *See Kijonka¸* 363 F.3d at 647. Although some Courts utilize the reasonable police officer standard, others rely on merely the prudent person standard. *See* 7th Circuit Model Jury Instructions, "Definition of Probable Cause" Comment d, p. 140. Whichever standard favors defendants most, though, no reasonable person would have believed that Mr. Ratliff was about to batter him or her.

Even assuming a clench could be a gesture, no prudent person would have been afraid of it. Further, the threat of "Dude, if you don't let me finish filling my tire with air, I'm going to

kill you," or any permutation thereof, would not elicit fear in a prudent person because on its face, the statement seeks permission to continue to fill a tire with air and is not really a threat to do anything. Nor is it coupled with any action that would indicate to a reasonable person that Mr. Ratliff made a gesture in furtherance of taking Defendant Carroll's life. Again, Defendants do not state that Mr. Ratliff yelled his threat in a fit of anger. They do not argue that he growled his threat, or lowered his voice menacingly. Slightly above normal conversation volume, Mr. Ratliff delivered the generic statement to gang officers who, at the time, had been working the streets for about a decade. *People v. Floyd*, 278 Ill.App.3d 568, 571 (Ill. App. 1st Dist. 1996) (holding people in large, urban areas must put up with a heightened amount of unwanted, aggravated interaction).

Besides stating it, no objective evidence exists to corroborate the self-serving statements of the defendants that they reasonably apprehended a battery. The video, an impartial witness to the event, corroborates this. Furthermore, so does the defendants' own testimony. Defendants never backed away from Mr. Ratliff. Defendants never ducked to the side or flinched. Defendants never placed their hand on their weapon, unclipped the fastener securing their weapon, and never drew their weapon. Defendants never did anything indicative of being in fear for their lives, let alone of receiving bodily harm. Their own actions seem indicative of how non-threatening Mr. Ratliff's statement and inaction were. Defendants' admissions would seem to impeach their previous, self-serving statements.

### C. There Was No Probable Cause for Assault Because a Conditional Threat Cannot Constitute Assault.

A conditional statement can never be considered an assault. This basic truism is a universally accepted fact that dates back almost four centuries. "If it were not assize-time, I would not take such language from you." *Tuberville v. Savage*, 1 Mod. Rep. 3, 86 Eng. Rep. 684

(1669).  In fact, this understanding is so engrained in western legal tradition that when states do want to criminalize conditional threats, they have created a statutory crime known as "conditional assault."  In the United States, a number of states do specifically criminalize conditional threats.  Illinois, however, is not one of them.  Rather, Illinois abides by the common law understanding that a condition precedent, by its very nature, alerts the listener that they are not about to receive a battery.  *Kijonka*, 363 F.3d at 648 (citing *Floyd*, 278 Ill.App.3d at 571; *People v. Kettler*, 121 Ill.App.3d 1, 4 (Ill. App. 4th Dist. 1984)).

Most importantly, it is the law of this Circuit. "It has been the law for centuries that an apprehension of an imminent battery, however created, is not reasonable if the defendant's words, however otherwise threatening, expressly negative a condition required for the battery to occur." *Soldal v. County of Cook*, 923 F.2d 1241, 1250 (7th Cir. 1991), rev'd on unrelated grounds, 506 U.S. 56 (1992). There, the Court held that Soldal's inviting the complainant to go outside and fight did not constitute a threat because it was the functional equivalent of a conditional threat—i.e. "If you were to accept my invitation to fight, I would knock your block off."  *Id.*  Here, the rough equivalent would be Mr. Ratliff stating "Dude, if you were to prematurely stop my filing this tire with air, I would kill you."  *See Id.* Since there was no legal way defendants could have made Mr. Ratliff drop the air hose, then could be no assault.

As Defendants' counsel noted in his opening statement, a field interview is predicated upon consent of the citizen to speak with a police officer.  Since there is no duty for citizens to submit to a field interview, Mr. Ratliff's conditional statement was simply as evocative a statement of nonconsent to a field interview that a citizen could lawfully verbalize. Regardless, the statement was conditional and thus not an assault. Therefore, the Defendants lacked probable cause to arrest him for aggravated assault and Plaintiff is entitled to judgment as a matter of law.

## II.   PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR UNREASONABLE SEARCH AND SEIZURE OF HIS PERSON AND CAR BECAUSE HE DID NOT CONSENT TO THE ILLEGAL ACTS

Defendants unconstitutionally searched and seized both Mr. Ratliff's person and his vehicle. As far as his person, the defendants had no reasonable and articulable suspicion to detain Mr. Ratliff. Therefore, they unconstitutionally seized him. Furthermore, his arrest lacked probable cause, which made that, too, an illegal seizure. As to his vehicle, Mr. Ratliff did not consent to a search or seizure of his car. Because defendants had no legal basis to stop, search, or seize Mr. Ratliff this Court should enter judgment as a matter of law granting Count I of his complaint.

### A. Defendants Had No Reasonable and Articulable Suspicion for Seizing Mr. Ratliff.

As a matter of law, Defendants actions constituted a seizure of Mr. Ratliff's person because they were conducting an investigative stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). Defendants claim that they had received multiple complaints of drug activity at that gas station. Therefore, Plaintiff will assume defendants have sufficiently alleged that the location where the stop occurred was a high narcotics or a high crime area. *U.S. v. Jackson*, 300 F. 3d 740, 742 (7th Cir. 2002). Defendants also stated that Mr. Ratliff immediately recognized them as police officers, and that he kneeled or leaned down next to his car tire when this happened. However, Mr. Ratliff remained facing them the entire time.

#### 1. Defendants conduct was the legal equivalent of an investigative stop.

When Defendants approached Mr. Ratliff and ordered him to put down the air hose, they were conducting an investigative stop, not a field interview. Field interviews are based upon the police-citizen interaction being consensual. *FL v. Bostick*, 501 U.S. 429, 439 (1991) (plurality opinion). However, an interaction rises beyond the level of a consensual encounter where (1) a

person is subjected to a show of authority and submits or (2) law enforcement officers apply physical force to limit the person's movement. *See id.*

The defendants here used physical force to limit Mr. Ratliff's movement. It is undisputed that Mr. Ratliff was either kneeling or crouching down by the ground when the officers surrounded his person, flanking Mr. Ratliff on both sides. As such, Mr. Ratliff could not have reasonably believed he was free to leave the area when the officers specifically positioned themselves to cut off any escape route. *U.S. v.* Drayton, 536 U.S. 194, 204-205 (2002) (finding that there was "no blocking of exits" made an encounter consensual). He also could not reasonably believe he was free to continue on with his business and disregard the officers as they ordered repeatedly for him to drop the air hose. Furthermore, when he did not comply with the orders, one of the defendants attempted to forcefully demand compliance by reaching for the air hose. This is the exact opposite of consent.

In fact, defendants stated on multiple occasions that Mr. Ratliff's show of turning from them piqued their interest. As such, from the very instant the defendants claim they attempted to pursue a field interview with Mr. Ratliff he objectively and unequivocally displayed his nonconsent by turning away from them. Defendants knew Mr. Ratliff did not want to speak with them. And yet, Defendants still approached Mr. Ratliff and positioned themselves in such a manner that no reasonable person would ever believe they were free to move. Their actions, therefore, illustrate that the defendants were not conducting a consensual field interview, but an investigative stop.

Moreover, this seizure happened immediately after the officers arrived at the scene. *Gentry v. Sevier,* 597 F.3d 838, 844 (7th Cir. 2010) (holding [w]hen the officers pulled up to Gentry in their car, and one officer exited the car and told Gentry to "keep his hands up" no

reasonable person at that would believe that "he was free to leave"). However, in order to conduct an investigative stop the defendants would first need a reasonable and articulable suspicion that Mr. Ratliff was about to or had just committed a crime in order to seize him. *See Terry*, 392 U.S. at 21.

## 2. Defendants lacked a reasonable and articulable suspicion for conducting an investigative stop.

Unlike a consensual field interview, investigative stops are considered seizures under the Fourth Amendment. In an investigative detention, the detaining officer must have specific articulable facts that, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the person stopped. *Id.* There must be a reasonable, articulable suspicion that the person detained is, has been, or will soon be engaged in criminal activity. *See Id.* The existence of reasonable suspicion turns on an objective assessment of the detaining officer's actions in light of all the facts and circumstances confronting him at the time, and not on the officer's state of mind. *See U.S. v. Knights,* 534 U.S. 112, 122 (2001). The test takes into consideration "the totality of the circumstances" at the time. *U.S. v. Swift,* 220 F.3d 502, 506 (7th Cir. 2000).

Here are the totality of the circumstances: (1) Defendants had seen people loitering and remembered the gas station (site of the incident) was a high narcotics area; (2) Defendants did not see Mr. Ratliff loitering; (3) Mr. Ratliff was standing by a car in the gas station/high narcotics area; (4) Mr. Ratliff and the vehicle were both in the immediate vicinity of an air pump; (5) Defendants saw Mr. Ratliff speaking with two other unidentified males; (6) As defendants approached, all three individuals immediately recognized them as police officers; (7) The two unidentified males walked right past the defendants; (8) Mr. Ratliff turned toward and reached

toward the wheel of his car, but remained looking at them; (9) Defendants immediately recognized Mr. Ratliff had an air hose in his hand.

Also important in considering the totality of the circumstances are what the officers did not have to support any conclusion: (1) Mr. Ratliff fit the description of a suspect for any crime, *See Gentry*, 597 F.3d at 845-46 (holding the "general report of a suspicious person" did not provide articulable facts that the person in question was committing a crime); (2) Mr. Ratliff had a reputation as a drug dealer, *U.S. v. Mitchell,* 256 F.3d 734, 737 (7th Cir.2001) (discussing officer's prior knowledge of defendant's history); (3) Previous experience with Mr. Ratliff alerted the defendants of Mr. Ratliff's propensity for any crime, *U.S. v. Walden,* 146 F.3d 487, 491 (7th Cir.1998) ("a criminal record in conjunction with other information can form the basis of a reasonable suspicion"); (4) Mr. Ratliff and either of the unknown males made hand-to-hand contact indicative of a drug transaction, *U.S. v. Wisdom*, No. 10-cr-30074-MJR (S.D.Ill. 2010) (holding a gesture akin to "hiding a bag of weed" did not constitute a reasonable articulable suspicion because it occurred after he had been seized, i.e. the officers exited the vehicle and approached him); (5) Any reason whatsoever why Defendants would suspect a recently parked car in a gas station would have a weapon hidden by the wheel.

The totality of the circumstances indicate that the defendants had no reasonable and articulable suspicion for believing Mr. Ratliff had been, was currently, or would in the near future engage in criminal activity. In this regard, he is rather akin to Mr. Wisdom. *See Id.* There, the officers conducted an investigatory stop of Mr. Wisdom when they saw him sitting idle in his vehicle at 5:15 am in front an abandoned house. However, the officers had no report of suspicious activity or crime in the area of the stop. *Id.* The police had received no calls with concerns about the vehicle. *Id.* The officers had observed no traffic infraction whatsoever or any

10

other type of violation by the driver. *Id.* The only thing the officers saw was that, as they turned a corner, a car sat idle in front an abandoned house. *Id.* Moreover, they had no idea how long the car had been at that location. *Id.*; *see also* fn. 2 (below). And lastly, even though the officer's knowledge of abandoned houses and crime in the area was relevant, that did not transmute into a reasonable and articulable suspicion that Mr. Wisdom was committing a crime. *Id.* After all, "for all they knew, the driver had just pulled the car over before they arrived." *Id.*

The only thing the defendants here had was an unreasonable and unspeakable suspicion. *See Bostick*, 501 U.S. at 441-442, n. 1 (Marshall, J., dissenting) (finding the decision to single out particular people is "less likely to be *inarticulable* than *unspeakable*") (emphasis original). To find against Mr. Ratliff, would hold that three people engaged in a brief dialogue[2] during broad daylight on a public way or in a place of public accommodation is indicative of criminal activity. Even in the worst neighborhood, the Fourth Amendment cannot stand for such a proposition.

In essence, Defendants are attempting to establish that Mr. Ratliff's refusal to consent to a field interview constituted a reasonable and articulable suspicion to detain him for an investigative stop. However, the law is clear in this area. A citizen does not have to answer any questions, rather, "he may decline to listen to the questions at all and may go on his way." *FL v. Royer*, 460 U.S. 491, 498 (1983) (citing *Terry,* 392 U. S. at 32-33 (Harlan, J., concurring)). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. U.S. v. Mendenhall, 446 U.S. 544, 555 (1980) (opinion of Stewart, J.). Moreover, it does not matter that the area technically constituted a high narcotics area. *IL v. Wardlow*, 528 U.S. 119, 124 (2000) (holding

---

[2] The conversation would have to have been brief as when Defendants first passed the station, they did not see Mr. Ratliff speaking with anyone.

"an individual's presence in an area of expected criminal activity, standing alone, is not enough" to support an investigative stop).

In *Wardlow*, the Supreme Court held that unprovoked flight from a police officer in a high crime area constituted reasonable and articulable suspicion to conduct an investigatory stop. *Id.* This case does not control, though, and for one simple reason: Mr. Ratliff did not flee from the defendants. *See Id.* According the defendants, there were three people congregated and two of them started to walk away when they saw the police officers. If walking nonchalantly can be considered fleeing, then by all means the defendants had a reasonable and articulable suspicion to stop and question them. However, Mr. Ratliff did not leave. He was standing right next to a car and did not so much as glance at the driver's side door, let alone make a move for it. He did not stick his hands in his pocket to check for keys. He also did not run, or jog, or even pivot as if he were even thinking about running. No, instead, he turned around but maintained eye contact as he put himself in a vulnerable position. Again, that is the exact opposite of fleeing. Moreover, it undermines the defendants' claims that Mr. Ratliff was being evasive.

Furthermore, sometimes the facts and circumstances that seem to support a defendants' purported claim for having a reasonable and articulable suspicion to conduct an investigatory stop is proof that it was, in fact, unreasonable and unspeakable. For instance, in *Marshall ex rel. Grossens v. Teske* the defendant-officers tried to argue that when they saw a young boy running from them as they were about to execute a warrant in a high narcotics area that met the threshold needed to stop him. 284 F.3d 765, 770 (7th Cir. 2002). However, the Court disagreed. *Id.* Noting that the officers were in plainclothes and carrying weapons, the Plaintiff there did "what any sane person" would have done in that circumstance—i.e. "he ran like hell." *Id.* at 706, 770. As such, if a sane person sees officers pull up and jump out their car to approach loiterers (drug

12

dealers) in a high narcotics area, it is more than reasonable to suspect that the sane person would have an extra incentive to get back to his business in order to avoid suspicion. *See id.*

If the police see a person standing next to a vehicle at an air pump reach down for the tire and have an air hose in his hand, the reasonable conclusion cannot be he is about to commit a crime. The reasonable conclusion must be that he is filling his tire with air. The totality of the circumstances demands this result, regardless of whether Mr. Ratliff was in Hyde Park or Englewood. The defendants had absolutely no reason to seize Mr. Ratliff and he is entitled to judgment as a matter of law as a result.

**B. Mr. Ratliff Did Not Consent to the Search or Seizure of His Vehicle.**

Mr. Ratliff did not give the defendants permission to search, and later seize, his car. Under the Fourth Amendment, a search is an investigatory act done with the intention of gaining new information. Meanwhile, a seizure occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal*, 506 U.S. at 61. Defendants state that they asked Mr. Ratliff where his identification was located, and he answered that his wallet was under the seat in his vehicle. Then, Defendants invited themselves to search Mr. Ratliff's vehicle in order to retrieve the wallet. At no time did Mr. Ratliff "freely and voluntarily" give his consent to the officers to search his car. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Identifying the location of an item does not give the police authority to go and retrieve that item, just like identifying a person of interest is inside one's home does not give the police permission to step inside. *Illinois v. Rodreguiz*, 497 U.S. 177, 181 (1990) (holding that without voluntary consent to search, warrantless entry into a person's private property, whether to make an arrest or search for specific objects, is a violation of the Fourth Amendment); *see Payton v.*

*New York*, 445 U.S. 573, 587 (1980).  No, police always ask: may I come in?   Except, neither of the defendants asked Mr. Ratliff if they could enter his car.

Regardless, Defendants' assertions that they only retrieved Mr. Ratliff's wallet from the car and observed what was in plain sight without conducting a search are contradictory and absurd.  First, there is no such thing as a plain view search.  *Horton v. California*, 496 U.S. 128, 133 (1990).  Either an item is in plain view, or you have to search for it.  Hence, plain view is an exception to the probable cause requirement for a search.  *Id*.  Second, by all accounts, Mr. Ratliff's wallet was not in plain view, it was under the seat.  As such, the defendant had to search for it.  Both defendants also state that, during their respective times *in* the vehicle, they made sure there was no contraband or weapons "in plain view."  These admissions, in and of themselves, are proof of a search. At the time the defendant approached the car, it was a closed-container in which Mr. Ratliff had a reasonable expectation of privacy, as recognized by society, whose integrity was violated when the defendants entered the vehicle.  *Katz v. U.S.*, 389 U.S. 347, 360 (1967).  Furthermore, even if the wallet was in plain view, there would need to have been "probable cause to associate the property with criminal activity" to seize it.  *Payton*, 445 U.S. at 587.  As it has been already established, there was no probable cause for the arrest and therefore the seizure of the wallet could not have been legitimate.  The Defendants' actions deprived Mr. Ratliff of possession of his property when they seized it, searched it, and passed it amongst themselves. And the moment Defendants entered Mr. Ratliff's car and took a look around, they had illegally searched and seized it.  *U.S. v. Rodriguez*, 888 F. 2d 519, 523 (7th Cir. 1989) ("many a closed container is accessible; opening it requires justification").

Additionally, none of the exceptions to the Fourth Amendment probable cause requirement for searches exist in this case.  The defendants cannot and do not argue that they

needed to search the car for officer safety reasons, nor is spoliation of evidence a legitimate excuse. *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. U.S.*, 267 U.S. 132 (1925). And, finally, a search incident to arrest is not a lawful basis for searching Mr. Ratliff's vehicle. *See Arizona v. Grant*, 556 U.S. 332, 347 (2009). In 2009, the Supreme Court held that a car cannot be searched incident to arrest unless the arrestee was able to access the cabin of the car or the officer has reason to believe evidence of the crime may be inside the vehicle. *Id.* at 344. Furthermore, once the arrestee is safely removed from the vehicle, the state actor has no reason to search the car incident to arrest. *Id.* at 347. "To allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis." *Id.*

The even more egregious violation, though, occurred when defendants moved Mr. Ratliff's vehicle without his permission. Defendants state that they had permission to move Mr. Ratliff's vehicle because he consented. In some fashion, Defendants argue that they essentially gave Mr. Ratliff two options: (1) have his car towed; or (2) have his car parked on the street. However, this Hobson's choice was an unconstitutional restriction on his Fourth Amendment right to be free from unreasonable seizures. In order to consent to a seizure, the consent must be "freely and voluntarily" given. *Schneckloth*, 412 U.S. at 222; *U.S. v. Garp*, 403 F.3d 439, 442 (7th Cir. 2005). There are a number of relevant factors which go into a determination as to whether consent was actually voluntarily given. Telling someone they must choose between two options is, inherently, a limitation on their ability to freely give their consent as the only option which would not have resulted in a seizure was not presented to Mr. Ratliff. The defendants' actions were tantamount to coercion. By creating a false dichotomy of Mr. Ratliff's lawful options regarding his car, the Defendants effectively removed his ability to refuse. Lastly,

because the there was no probable cause for the arrest, Mr. Ratliff could not have consented.

*U.S. v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004) (holding that consent given during illegal

detentions, stops, or arrests is invalid).

> **C. Defendants had No Probable Cause to Arrest Mr. Ratliff, And He Did Not Consent to the Search or Seizure of His Person.**

Undoubtedly, the worst seizure that occurred here was of Mr. Ratliff's person. For all of

the aforementioned reasons, defendants did not have a reasonable and articulable suspicion or

probable cause to detain or arrest him, respectively. *Supra*, Part I. Therefore, he was

unconstitutionally seized. As a matter of law, Plaintiff is entitled to judgment against the

defendants for unconstitutional search and seizure.

## III. DEFENDANTS ARE LIABLE, AS A MATTER OF LAW, FOR MALICIOUS PROSECUATION BECAUSE THEY KNOWINGLY INSTITUTED FALSE CRIMINAL CHARGES AGAINST MR. RATLIFF.

To prove the tort of malicious prosecution, a plaintiff must demonstrate: (1) that

defendants began or continued the original criminal proceeding; (2) plaintiff received a favorable

termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered

damages. Swick v. Liautaud, 662 N.E.2d 1238, 1242 (1996).

It is uncontroverted that defendants began the criminal proceeding. Mr. Ratliff received a

favorable termination in his criminal case when it was stricken with leave to reinstate, but was

not reinstated. *See Richardson v. City of Chicago*, Case No. 08-4824 (N.D.Ill. 2011) (treating

SOL as a *nolle prosequi* dismissal where the prosecutor dropped the charges after the

complaining officers failed to show for court). There was no probable cause to arrest Mr. Ratliff

for aggravated assault, or any other crime. *See supra*, Part I. Also, the defendants acted with

malice. Malice is defined as the institution or continuation of criminal prosecution for any reason

other than to bring the party to justice. *Mack v. First Sec. Bank of Chicago,* 158 Ill. App. 3d 497,

501, 511 N.E.2d 714, 717 (1987). Because the defendants knew that Mr. Ratliff had not

committed an assault when they arrested him, they acted with clear malice. Also uncontroverted

is that Mr. Ratliff suffered damages. While his emotional pain and embarrassment may

debatable, the fact that his car was stolen is not.  This permanent deprivation satisfies the final

prong for establishing malicious prosecution. Mr. Ratliff is entitled to judgment as a matter of

law against defendants for his malicious prosecution.

## CONCLUSION

WHEREFORE, Mr. Ratliff is entitled to judgment as a matter of law on his claim for

unlawful arrest, illegal search and seizure, and malicious prosecution, he therefore respectfully

requests that this Honorable Court enter an order against defendants, and any other remedies as it

deems equitable and just.

Respectfully Submitted,


/s/ Jared S. Kosoglad
One of Plaintiff's Attorneys


Jared S. Kosoglad, P.C.
118 South Clinton Street
Suite 200
Chicago, Illinois 60661
(312) 513-6000

## CERTIFICATE OF SERVICE

The undersigned attorney, on oath, hereby certifies that the attached document, Motion

for Partial Judgment as a Matter of Law, was served upon the attorneys of record in person on

the 29th day of November, 2012.

/s/ Jared S. Kosoglad
One of Plaintiff's Attorneys