**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PARES RATLIFF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-739 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Rule 50(a) motion for judgment as a matter of law [127], Defendants' Rule 59(a) motion for a new trial or remittitur and renewed motion for direct verdict [137], and Plaintiff's motion for partial judgment as a matter of law [131]. For the reasons stated below, the Court denies all three motions [127, 137, 131]. Plaintiff's request for attorneys' fees and costs will be considered under separate order.

## I.    Background

On November 29, 2012, following a four-day jury trial, the jury returned a verdict against Defendants in this matter, and the following day the Court entered judgment on the verdict. As to Defendant Officer James Carroll, a verdict in favor of Plaintiff was entered on the claims of false arrest, illegal search and seizure, and malicious prosecution. As to Defendant Officer Brian Murphy, a judgment on the jury verdict was entered on the claims of false arrest and illegal search and seizure. The jury awarded compensatory damages in the amount of $30,000, punitive damages against Defendant Officer Carroll in the amount of $15,000.75, and punitive damages against Defendant Officer Murphy in the amount of $5,000.

Defendants have moved for judgment as a matter of law, a new trial, and remittitur. Plaintiff contends that Defendants have failed to make the threshold showing that they are entitled to judgment as a matter of law or a new trial because Defendants' motion fails to refer to the trial record. According to Plaintiff, Defendants cannot meet their initial burden to show that the jury lacked a sufficient evidentiary basis, that the verdict was against the weight of the evidence, that the damages were excessive, or that the trial was somehow unfair because Defendants have not cited or identified any of the evidence or proceedings from the trial.

Although Plaintiff pointed out Defendants' failure to cite to the record in his response brief, Defendants did not request leave to supplement their initial motion (a request that the Court routinely grants). Even more startling, Defendants did not file a reply brief to address the plethora of legal authority cited in Plaintiff's response, despite being given leave to do so. Perhaps Defendants' decision is not that surprising, given the overwhelming evidence presented at trial of Defendants' unconstitutional conduct. But such tactics—which have occasioned lengthy delays in resolving the post-trial matters in this case—have nonetheless frustrated the legal process. Although the Court declines to wholly deny Defendants' motions, to the extent that citation to the record would be necessary to support a position, Defendants' failure to cite to the trial record or the pretrial conference record will not be excused. See, *e.g.*, *Spina v. Forest Preserve Dist. of Cook County*, 207 F. Supp. 2d 764, 770 (N.D. Ill. 2002) (criticizing party for failing to cite transcript in motion for a new trial); *Parr v. Nicholls State University*, 2012 WL 1032905, *3 (E.D. La. 2012) ("without the benefit of citation to the trial transcript, the Court has no basis for determining that any error occurred."); *Warren v. Thompson*, 224 F.R.D. 236, 239-240 fn. 7 (D.D.C. 2004) (criticizing party for failing to reference trial transcripts and finding "no basis for review" of the party's arguments).

2

## II.    Legal Standards

A court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000); see also *Hall v. Gary Community Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002). Although a mere scintilla of evidence is not sufficient to sustain a verdict, the Court is not to substitute its view of the contested evidence in place of the jury's determination. *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). A jury verdict is not to be set aside if, viewing the evidence in the light most favorable to the prevailing party, there exists within the record any reasonable basis to support the verdict, leaving issues of credibility and weight of evidence to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted). In other words, the test is whether "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002); see also *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 630 (7th Cir. 1996) (the court is limited to assessing whether no rational jury could have found for the plaintiff). A trial court may grant a motion for a new trial where "the clear weight of the evidence is against the jury verdict, the damages are excessive or for some other reason the trial was not fair to the moving party." *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir. 1993) (citing *Walden v. Ill. Central Gulf R.R.*, 975 F.2d 361, 365 (7th Cir. 1992)). However, the Seventh Circuit has cautioned that "only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Emmel*, 95 F.3d at 629.

### III.    Challenges to the Sufficiency of the Evidence

Defendants argue seven independent bases for relief under Rule 50, contending that the Court erred by failing to enter judgment in Defendants' favor on (1) the unlawful search claim against both Defendants; (2) the claim of unlawful search against Plaintiff's person; (3) the claim of unlawful seizure of Plaintiff's vehicle; (4) the doctrine of community caretaking; (5) the false arrest claim; (6) the malicious prosecution claim; and (7) the claim for punitive damages. Plaintiff has responded to all of Defendants' arguments, and, despite being given leave to do so, Defendants have not replied.

#### A.    The Search of Plaintiff's Vehicle

Defendants argue that Defendant Murphy's search of the vehicle for Plaintiff's wallet was reasonable and that Defendant Carroll's entry into the vehicle to move it off private property into a legal parking space was reasonable as a matter of law. Defendants do not cite any evidence or trial testimony in support of their argument.

"'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Police may lawfully "search a vehicle incident to a recent occupant's arrest [without a warrant] only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" (*Gant*, 556 U.S. at 343), or when, "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615 (2004)). The *Gant* Court specifically rejected the notion that the Fourth Amendment authorizes a vehicle search incident to every recent occupant's arrest. *Gant*, 556 U.S. at 343.

First, evidence relevant to Plaintiff's alleged "assault" could not be found in the vehicle. By definition, the only means by which Plaintiff could have assaulted Defendants, or caused a reasonable fear of imminent bodily harm, was with the air hose in his hand at the time of the alleged threat. No evidence of assault could be found in the vehicle, as the objective nature of the crime of assault would require an analysis of what the officers knew at the time of the alleged assault. Anything found inside the car would not support the charge.

Perhaps anticipating the foregoing analysis, Defendants primarily argue that legitimate government interests in properly identifying persons taken into custody or in securing an arrestee's property outweigh the minimal privacy invasion occasioned by Defendants' searches in this case. See, *e.g.*, *U.S. v. Kelly*, 267 F. Supp. 2d 5, 14 (D.D.C. 2003) (holding that an officer's seizure of a firearm during the course of lawful traffic stop was reasonable on the basis of the plain view doctrine). Yet "[t]o qualify for the [search incident to arrest] exception * * * the arrest must be lawful * * *." *United States v. Wesley*, 292 F.3d 541, 545 (D.C. Cir. 2002); see also *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003) ("Generally, it is legal to search a vehicle incident to a *lawful* custodial arrest * * *.") (emphasis added). Defendants' argument fails to analyze the evidence in a light most favorable to Plaintiff and also fails to account for the jury's conclusion that the arrest of Plaintiff was unlawful. Both Plaintiff and the surveillance video contradicted Defendants' self-serving narratives about the legality of Plaintiff's arrest. The jury clearly disbelieved Defendants as to the validity of the arrest. Viewing the evidence in the light most favorable to Plaintiff, there were no circumstances that justified either Plaintiff's arrest or the search of Plaintiff's vehicle; rather, the evidence overwhelming points to the conclusion that Defendants were simply harassing Plaintiff. Thus, Defendants' contentions that Officer Murphy was trying to identify Plaintiff and Officer Carroll was attempting to lawfully

park Plaintiff's vehicle off private property provide no relief to Defendants' for their unconstitutional actions. Plaintiff's arrest was unlawful as was the subsequent search and seizure of his vehicle incident to an unlawful arrest.

### B. Defendants' Seizure of Plaintiff's Vehicle

Defendants, in a single paragraph devoid of any legal authorities or citations to the trial record, claim that the jury's finding that Defendants seized Plaintiff's vehicle was against the manifest weight of the evidence because it "was undisputed at trial that the Defendant Officers did not remain in possession of the Plaintiff's vehicle."

"A seizure of property * * * occurs when 'there is some meaningful interference with an individual's possessory interest in that property.'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Defendants dispossessed Plaintiff of his vehicle when they arrested him without probable cause or any other lawful basis. Their claim that the jury's finding of a seizure was against the manifest weight of the evidence is unfounded. As previously set forth, Plaintiff's arrest was unlawful as was the subsequent seizure of his vehicle incident to an unlawful arrest.

### C. Search of Plaintiff's Person

Defendants argue that although Plaintiff withdrew his independent claim for unlawful search and seizure of the person, which was separate and apart from the false arrest claim, the Court should still grant Defendants' motion for judgment as a matter of law on this claim. It is unclear what Defendants hope to gain from this argument. The issue is moot and not properly before the Court because the claim was not submitted to the jury.

### D.    False Arrest

Defendants do not present any plausible argument of an evidentiary deficiency on the lack of probable cause. Defendants do not develop this argument, cite to the record, provide applicable authorities, or do anything other than devote a subtitle to this argument.  Plaintiff's testimony as well additional evidence introduced at trial adequately support the jury's finding of no probable cause for Plaintiff's arrest.

### F.    Malicious Prosecution

Defendants argue that Plaintiff failed to establish a cause of action for malicious prosecution because Plaintiff presented no evidence that Defendants received notice of Plaintiff's court date and therefore they could not have instituted or continued the proceedings. Defendants' argument ignores the applicable law and evidence presented at trial.  Officer Carroll signed the criminal complaint that initiated the prosecution.  The prosecution then struck the assault charge when Officer Carroll failed to appear.  Where a plaintiff presents evidence that the prosecutor abandoned the charge because the complaining witness failed to appear, a jury can conclude that the absence of probable cause led to the absence of the complaining witness. *Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 656-57 (Ill. App. 1999); *Lopez v. City of Chicago*, 2011 WL 1557757, at *3 (N.D. Ill. April 25, 2011); *Edwards v. Village of Park Forest*, 2009 WL 2588882, at *6 (N.D. Ill. Aug. 20, 2009) ("a reasonable jury could infer that the lack of probable cause was itself the reason for the officers' failure to appear"); *Mahaffey v. Misner*, 2009 WL 2392087, at *3 (N.D. Ill. July 31, 2009) (failure of complaining witness to appear, "supports a finding of favorable termination"); and *Woods v. Clay*, 2005 WL 43239, at *15 (N.D. Ill. Jan. 10, 2005). Officer Carroll's failure to appear could have led (and apparently did lead) a reasonable

jury to conclude that the prosecutor's decision to strike the assault charge was indicative of Plaintiff's innocence.

### G.    Punitive Damages

Defendants contend that Plaintiff's evidence and testimony did not support an award of punitive damages.  "A jury may award punitive damages in a § 1983 case if it finds that the defendants' conduct was motivated by evil intent or callous indifference to the plaintiff's federally protected rights."  *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002).  In assessing whether a punitive damage award is constitutionally appropriate, the Supreme Court has directed courts to focus their evaluation on three guideposts: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the amount of the punitive damages awarded and the harm or potential harm suffered by the Plaintiff; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996); see also *G.G. v. Grindle,* 665 F.3d 795, 798 (7th Cir. 2011) (in determining whether an award is reasonable, courts consider whether "(1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence * * *; and (3) whether the award is roughly comparable to awards made in similar cases").

Here, the Court instructed the jury that it may award punitive damages against a defendant "only if you find that his conduct was malicious or in reckless disregard of Plaintiff's rights." R. at 132, p. 31.  The Court defined malicious conduct as "accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff" and reckless disregard as "complete indifference to Plaintiff's safety or rights." *Id.*  The evidence presented at trial was that at the time of his arrest, Plaintiff had stopped to fill his tires with air on his way to buy diapers for his

child after working the midnight shift at Jewel. Plaintiff testified at trial that Defendants demanded that he accompany them on account of a warrant. However, Defendants did not actually have a warrant for Plaintiff. Plaintiff testified that Defendants then arrested him, searched and seized his vehicle, and maliciously prosecuted him. Based on the trial testimony and videotape surveillance footage presented, a jury easily could have concluded that Defendants arrested Plaintiff, searched and seized his car, and maliciously prosecuted him out of ill-will and spite and for the purpose of injuring Plaintiff. In fact, the overwhelming majority of the evidence presented at trial suggested that there was no basis other than ill-will and spite for arresting and prosecuting Plaintiff because he may have said something sarcastic to them.

Additionally, the jury reasonably could have found that Defendant Officers gave false testimony in an effort to avoid liability. See, *e.g.*, *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) ("A plaintiff may establish that the defendant acted with reckless disregard for his federally protected rights by showing that the defendant's employees lied, either to the plaintiff or the jury, in order to cover up their discriminatory actions."); *Lampley Learning Curve Toys v. Onyx Acceptance Corp.*, 340 F.3d 478, 483 (7th Cir. 2003) ("Because a jury could have found that Onyx engaged in a cover-up rather than a good faith investigation of Lampley's retaliatory discharge claim, we find that punitive the damages issue was properly before the jury."). The videotape surveillance contradicts Defendant Officers' testimony in multiple respects and gives the strong impression that the officers were lying to make up for the lack of probable cause.

Furthermore, the jury awarded punitive damages against Defendant Carroll in the amount of $15,000.75 and against Defendant Murphy in the amount of $5,000. Not only were these amounts not excessive in light of the evidence, the addition of the seventy-cents in their award of

punitive damages reflects the jury's "sound reasoning" in setting the amount of those damages, as Plaintiff testified to the seventy-five cents he spent attempting to fill his tires with air before he was interrupted by Defendants. Defendants' cursory challenge to the punitive damages award is without merit.

## IV. Challenges to Motion in Limine Rulings

Defendants filed 20 motions in limine in this matter and contend that the Court improperly denied portions of Defendants' motions in limine 2, 14, 19, and 20.

### A. Motion in Limine 2

Defendants' Motion in Limine No. 2 sought to bar testimony regarding misconduct by other City of Chicago employees who were not Defendants in the suit. In denying the motion in limine in part, the Court ruled that "Plaintiff may not insinuate that any non-Defendant officers committed misconduct, since there are no claims against any such officers in this case." Defendants argue that because Plaintiff's counsel (i) cross examined Officer Babich (a non-party) regarding the insertion of "Vice Lord" on the Original Case Incident Report for the Aggravated Assault, which was admitted as Plaintiff's Exhibit 16, and (ii) cross examined Officer Schwandt (a non-party) regarding a perceived delay in completing the Original Case Incident Report with respect to the stolen vehicle, Babich's and Schwandt's misconduct was imputed to Defendant Officers. Defendants fail to cite to the record or to any legal authority in support of their position.

The evidence admitted through Officers Babich and Schwandt was relevant to the issues at trial and did not run afoul of the Court's pretrial rulings. At trial, Officer Babich testified that he included Plaintiff's alleged gang affiliation at the direction of one of Defendant Officers, and Plaintiff's counsel argued that Defendants wrongly caused Plaintiff to be referenced as a gang

member in an official report. The testimony elicited as well as counsel's argument were well within the bounds of the Court's motion in limine rulings. Officer Schwandt took Plaintiff's statement about his stolen vehicle, and, during trial, attempted to cast doubt on Plaintiff's testimony regarding the vehicle. Viewed in the light most favorable to Plaintiff, the jury could have inferred from Officer Schwandt's testimony that he assisted Defendants in covering up their misconduct. The questioning was within the bounds of the Court's motion in limine rulings and relevant to the issues presented at trial. Moreover, Defendants have failed to develop their argument with respect to Officer Schwandt and have failed to cite to or point to any offending testimony. Defendants bear the burden of articulating the errors that occurred during the trial and supporting their arguments with citations to the record and legal authority. Having failed to do so, the Court can only guess as to Defendants' complaint with respect to Officer Schwandt. The Court declines to do Defendants' work for them.

### B. Motion in Limine 14

Defendants contend that the Court erred in allowing city employees to be called as adverse witnesses. Defendants' sole argument is that Officers Babich and Schwandt were not present during the arrest and therefore could not be deemed adverse witnesses.

Prior to trial, Plaintiff moved in limine to call five City of Chicago employees as adverse or "hostile" witnesses under Rule 611. Rule 611 provides that, while leading questions typically should not be used on direct examination, they may be employed "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c). "The normal sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party." *Washington v. State of Illinois Department of Revenue*, 2006 WL 2873437, at *1 (C.D. Ill. Oct. 5, 2006) (quoting *Vanemmerik*

*v. The Ground Round, Inc.*, 1998 WL 474106, at *1 (E.D. Pa. 1998)). When the city is a defendant to a § 1983 claim, police officers employed by the city and who were present during portions of the incident at issue are "clearly qualified as a 'witness identified with an adverse party.'" *Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981).

The non-defendant officers whom Plaintiff called at trial were employees of Defendant City of Chicago at all times during the litigation and each had a hand in the ordeal which gave rise to the lawsuit. For instance, one of the officers has been identified as a supervisor of Defendant Officers. The other three officers had contact either with Plaintiff or the incident–one was on duty at the station, one drafted the case report, and another took Plaintiff's complaint regarding the stolen vehicle. All of these witnesses, by virtue of their employment with Defendant City of Chicago, by their involvement (even if tangential or limited) with the case, and by their relationship with the Defendant Officers as their co-workers, clearly qualified as "witness(es) identified with an adverse party" for purposes of Rule 611(c). *Washington*, 2006 WL 2873437 at *1-2.

A classic example of a witness identified with an adverse party is a police officer called as a witness in a § 1983 trial involving an incident in which he or fellow officers were involved. In *Ellis v. City of Chicago*, the Seventh Circuit held that a Chicago police officer that witnessed the incident at issue "clearly qualified" as a witness identified with an adverse party pursuant to FRE 611(c):

> Plaintiffs argue that the trial judge committed reversible error by refusing to recognize Officer Calandra and Sergeant Holub as witnesses identified with an adverse party for purposes of this Rule * * * * These police officers were employees of defendant City of Chicago at all times during the litigation and were each present during portions of the incident which gave rise to this lawsuit * * * * Officer Calandra and Sergeant Holub thus clearly qualified as "witness(es) identified with an adverse party" for purposes of Rule 611(c).

667 F.2d at 612-13.  Although Officers Babich and Schwandt were not present during the arrest (and thus could not speak to the issue of probable cause), their testimony was relevant to other issues and claims in the case, including the arrest report and the seizure of Plaintiff's car.  Being both (i) involved in the incidents in question and (ii) employed by the City of Chicago, these witnesses were properly deemed adverse witnesses.  Allowing Plaintiff to use leading questions during their direct examinations was not an error.

C.      **Motion in Limine 19**

Defendants' claim that the award of $30,000 in compensatory damages was "clearly * * * against the manifest weight of the evidence" because "the jury awarded * * * ten (10) times the value of the vehicle."  Defendants' argument is factually misleading and unsupported by any authority.

"Under the federal standard for reviewing compensatory damages we assess whether the award is 'monstrously excessive,' 'whether there is no rational connection between the award and the evidence,' and whether the award is comparable to those in similar cases."  *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 313 (7th Cir. 2010) (quoting *Naeem v. McKesso Drug Co.*, 444 F.3d 593, 611 (7th Cir. 2006)).  Defendants do not refer to this standard at all in their argument.  The "'required rational connection between the evidence and the award does not imply mathematical exactitude,' particularly where, as here, the jury was instructed to consider damages for pain and suffering." *Nelson v. Salgado*, 2012 WL 3481700 *2 (N.D. Ill. Aug. 15, 2012) (quoting *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009)).  In *Nelson*, the district court denied a remittitur on a jury award of $25,616.50 for illegal search and seizure.  *Id.* In that case, the plaintiff was detained 25-30 minutes.  The court noted that the defense ignored other evidence that the jury could have considered in reaching its award, and even though the

defense cited three allegedly comparable cases, the defense brief did not apply the cited cases to the facts at hand.

Defendants' brief in the instant case does not cite the correct standard of law or provide any comparable cases upon which to base a decision that the jury's verdict was monstrously excessive. Additionally, Defendants make no mention of several matters upon which the jury could have based their determination of compensatory damages. The Court provided that damages could be awarded for: (1) lost wages and profits; (2) emotional distress and interference with a normal life; and (3) the reasonable value of property lost. R. at 132, p. 29. Defendants ignore the detailed testimony that Plaintiff offered at trial on the damages issue in addition to the value of the vehicle. Plaintiff testified about the false arrest, loss of liberty, the half-day in jail, the long walk home, the inability to contact his family, the embarrassment, humiliation, and emotional distress, the concern about his child who did not have diapers, the loss of use of his child seat, phone, and car, the allegation of gang membership, the excessively long commute to work, the missed work day, and other matters Defendants neglect to mention. Defendants' reliance on the blue book value of the vehicle as the only basis for damages also is flawed. Beyond paying for the vehicle, Plaintiff also testified that he made and paid for multiple improvements to the vehicle, that he lost property beyond the vehicle (including his cellular phone), and that he lost the use of his property, including his phone, car, and child seat. $30,000 in compensatory damages for Plaintiff's injuries was not "monstrously excessive" and was rationally connected to the evidence.

### D.    Motion in Limine 20

Defendants' twentieth motion in limine sought to bar any testimony or evidence regarding Plaintiff's general employability. The Court granted Defendants' motion to bar

evidence regarding Plaintiff's potentially lost employment opportunities as such evidence would be speculative. However, prior to trial, the Court noted that it would consider allowing testimony that Plaintiff received a call from an investigator inquiring as to his gang affiliation as such testimony was relevant to the embarrassment that Plaintiff felt at being labeled a gang member. At trial, Plaintiff sought to offer a redacted portion of testimony regarding "an inspector" contacting him, inquiring about his arrest, and Plaintiff's subsequent embarrassment. Defendants argued that such testimony could not be separated from Ratliff's claim that his employment chances were being affected. Defendants further noted that allowing such testimony would only serve to confuse the jury. Considering the arguments of both sides, during the trial, the Court ruled that Plaintiff could testify that an "investigator" called him and asked him about his gang affiliation and that Plaintiff felt embarrassed and humiliated. The Court further noted that Plaintiff could not tie the call to any employment opportunities.

At trial, Plaintiff ultimately testified that a "background investigator" contacted him. Defendants suffered no unfair prejudice as a result, because the caller was in fact a background investigator, part of Plaintiff's claim was that he suffered embarrassment at being falsely labeled a gang member by Defendants, "job" or "employment" was never mentioned, and any minor prejudice was remedied by the Court sustaining Defendants' objection to "background" and instructing the jury to disregard testimony to which the Court sustained an objection. As the Court noted on the record, Defendants' own response to this minor deviation from the Court's ruling caused them more prejudice than the admission of the modifier "background" before the word "investigator."

## V.    Challenges to Jury Instructions

The Court views "jury instructions in their entirety in order to determine whether as a whole the instructions were sufficient to inform the jury correctly of the applicable law." *Jimenez v. City of Chicago*, 877 F. Supp. 2d 649, 663 (N.D. Ill. 2012) (quoting *Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir. 2007)).  Defendants' summarily reference eight jury instructions that they claim should have been submitted to the jury.  For 5 of the 8 instructions about which they complain, they cite no authority that would warrant a new trial on the basis of the Court's refusal to provide the instructions cited and provide no analysis of the instructions actually given.  Thus, Defendants' challenges to Defendants' Revised Proposed Instruction 43 (Malicious Prosecution Elements), 48 (Terry Stop (including revised submitted version)), 49 (Definition of Aggravated Assault), 51 (Search and Seizure, Consent (revised proposed)), and 52 (Consent related to Search and Seizure) are deficient and will not serve as the basis for granting a new trial.   With respect to the damages instructions that Defendants challenge (Defendants proposed instructions 35 and 36), the Court properly instructed the jury on both compensatory damages and punitive damages.  The evidence and testimony in this case rose to the level required to award punitive damages, and the Court properly instructed the jury on what they could consider in awarding both compensatory and punitive damages.   Giving Defendants' proposed instruction 36—which provided that the jury could only award damages for mental/emotional pain and suffering— would have been an error as Plaintiff presented evidence of additional categories of damages.

The only authority cited by Defendants is in support of their argument that the Court should have given Defendants' proposed instruction 47, which related to field interviews.  However, the evidence presented in this case did not call for a field interview instruction.  Rather, the question in this case was whether Defendants had probable cause to arrest Plaintiff,

as they in fact arrested him. Defendants were free to, and did, testify at trial regarding consensual civilian encounters (also known as "field interviews"); however, once they arrested Plaintiff, the inquiry became whether they had probable cause, not whether they conducted a proper field interview. Had Defendants merely detained Plaintiff, but not arrested him, the instruction may have been appropriate. But given the evidence presented at trial, the Court concluded that instructing a jury on the use of a field interview as a police tactic, when in fact the officers did not conduct a field interview but rather made an arrest, would confuse the jury. Declining to give an instruction that would have served to confuse the jury was not prejudicial error.

## VI.     Plaintiff's Motion for Judgment as a Matter of Law

Plaintiff's claims were properly submitted to a jury.

## VII.    Conclusion

For the reasons stated above, Defendants' Rule 50(a) motion for judgment as a matter of law [127], Defendants' Rule 59(a) motion for a new trial or remittitur and renewed motion for direct verdict [137], and Plaintiff's motion for partial judgment as a matter of law [131] are all denied.

Dated:  July 8, 2013                                    _____
                                                        Robert M. Dow, Jr.
                                                        United States District Judge

17